CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 24 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LAVERN D. BEAVER, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06-CV-00651 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MICHAEL ASTRUE, | ) By: | Hon. Michael F. Urbanski |
| COMMISSIONER OF SOCIAL | ) | United States Magistrate Judge |
| SECURITY, | ) | |
|     Defendant. | ) | |

Plaintiff Lavern D. Beaver ("Beaver") brought this action for review of the Commissioner of Social Security's decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. This case was transferred to the undersigned Magistrate Judge on November 13, 2006, pursuant to 28 U.S.C. § 636(c)(2) (2007). Following the filing of the administrative record and briefing, oral argument was held on October 3, 2007. As such, the case is now ripe for decision. Based on the filed briefs, oral argument, and a thorough review of the record and relevant case law, the decision of the Commissioner is affirmed as it was founded on correct legal principles and supported by substantial evidence.

I.

Born on February 12, 1967, Beaver is a younger individual who completed high school, taken some college courses and has received specialized law enforcement training. (Administrative Record [" R."] at 38, 86, 126, 160, 663) Beaver's previous employment included positions within the field of law enforcement including work as a deputy sheriff and most recently, a police officer for Virginia Tech. (R. 121)

Beaver filed an application for DIB on April 16, 2003, alleging that she became disabled on December 10, 2001 due to dizziness, lethargy, fibromyalgia, headaches, numbness and

swelling in the right arm, leg, and foot, neck pain, loss of strength in the right arm, difficulty speaking, memory loss, and nausea. (R. 86, 120) Her application was denied upon initial review and reconsideration. An Administrative Law Judge ("ALJ") held a hearing on May 18, 2004, at which Beaver, an independent medical expert, H. C. Alexander, III, M.D., and a vocational expert (VE) testified. On September 8, 2004, the ALJ issued a decision denying Beaver's application for disability benefits, which was reversed and remanded by the Appeals Counsel for an additional hearing. A second administrative hearing was held on May 25, 2005, after which the ALJ issued a decision again denying benefits on July 28, 2006. (R. 17-37) The ALJ's findings became the final decision of the Commissioner of Social Security when the Appeals Council denied review on October 11, 2006. (R. 9-12)

## II.

In the 2006 decision, the ALJ determined that Beaver suffers from medically determinable fibromyalgia and myofascial pain syndrome, cervical and lumbar degenerative disc disease, right shoulder bursitis, and a somatoform disorder, which are "severe" under the regulations. (R. 25, 35) The ALJ noted that the medical records revealed diagnoses of irritable bowel syndrome, granulocytopenia,[1] fatigue, and temporomandibular joint (TMJ) syndrome which the ALJ did not consider to be "severe." (R. 25, 35) Furthermore, the ALJ found that Beaver's somatoform[2] disorder resulted in mild difficulty in her ability to perform daily living activities and maintain social functioning, moderate difficulty in maintaining concentration,

---

[1] Granulocytopenia is a reduction in the number of granular leukocytes in the blood. Dorland's Illustrated Medical Dictionary (30th Ed. 2003). Granulocytopenia results in a syndrome of frequent chronic bacterial infections of the skin, lungs, throat, etc. See www.MedicineNet.com.

[2] Somatoform denotes physical symptoms that cannot be attributed to organic disease and appears to be of psychic origin. Dorland's Illustrated Medical Dictionary (30th Ed. 2003).

2

persistence, or pace, and no repeated episodes of decompensation, which did not meet or equal the criteria necessary for a finding of disability. (R. 36) The ALJ's decision exhaustively catalogs the wide variety of medical procedures and tests performed on Beaver to assess Beaver's myriad complaints.

For example, in December, 2001, Beaver was hospitalized for complaints of typical flu-like symptoms, including diffuse muscle pain, headache, dizziness and some weakness, especially in the right upper extremity. (R. 267) Beaver attributed the onset of these symptoms to a minor motor vehicle accident in December while working when her police car veered off the side of the road and hit a small post. Multiple medical studies were performed, including a head and chest CT scan and echocardiograph, all of which were normal. Beaver was discharged the next day with a diagnosis of viral syndrome.

Shortly thereafter, Beaver's family doctor referred her to Dr. Donald B. Nolan, a Roanoke neurologist, for her complaints of numbness in her right hand, swelling of her right hand and numbness on the right side of her face. (R. 282) Dr. Nolan ordered a battery of tests, including a nerve conduction study, electromyography study, and cerebral MRI, all of which were normal. Beaver had a serum study for heavy metals and a Lyme disease test, again which were normal. Blood tests were also normal. Beaver's cervical MRI revealed small disc herniations at multiple levels, but without root or cord compression. (R. 283) Despite his examination and extensive testing, Dr. Nolan could find no physiologic basis for Beaver's symptoms and could not explain them on a neurological basis. (R. 284-85)

In February, 2002, Beaver was seen by Dr. David J. Novak at Lewis-Gale Clinic for evaluation of her multiple symptoms, who concurred that "from a neurological standpoint it does

3

not seem to support or give some idea why she is having these types of complaints." (R. 416) Dr. Novak had no further recommendations beyond trying physical therapy. (R. 420)

Later that month, Beaver was referred to Dr. Garry E. Bayliss, a rheumatologist, for evaluation of her musculoskeletal pain. Dr. Bayliss saw Beaver in February, 2002 for evaluation and in April, 2002 for a follow-up. Dr. Bayliss' impression upon evaluation was of myofascial pain syndrome in her right upper back and degenerative disc disease of the cervical spine. Dr. Bayliss discussed with Beaver the importance of non-medical measures including heat, massage and exercise and prescribed some additional medications. (R. 301) Following a follow-up visit in April, 2002, Dr. Bayliss referred Beaver for a psychological evaluation and for pain management treatment. (R. 299) Psychotherapy and pain management treatment were undertaken during the spring and summer of 2002. (R. 290-97, 321, 324)

On July 16, 2002, Beaver was seen for an independent medical examination by an orthopedist, Dr. Robert B. Stephenson, whose impression was of chronic muscle pain and possible fibromyalgia with elements of chronic pain syndrome. (R. 325) Dr. Stephenson noted Beaver's extensive medical workup without significant improvement and stated that she likely was at maximum medical improvement. (R. 325) Dr. Stephenson encouraged Beaver to continue with psychological and pain management treatment, and stated that he believed that "significant amelioration of the patient's condition is unlikely." (R. 325) Dr. Stephenson stated that "I feel that she remains completely disabled from work at this time and unfortunately will likely remain permanently disabled in the future." (R. 326)

In contrast, one month later, a state agency physician reviewing Beaver's medical records concluded that she retained the residual functional capacity to perform a range of work between the sedentary and light classifications. (R. 346-53)

4

Beaver was diagnosed with granulocytopenia in 2003 and was once again referred to a rheumatologist, Dr. Robert R. Johnson, who diagnosed "fibromyalgia as her disabling condition," (R. 389), and provided some education and treatment.

Beaver was injured in an automobile accident in August, 2003, and was seen again by Dr. Nolan, a neurologist, following the accident, primarily for numbness in her left face and left arm. (R. 278-79) Beaver told Dr. Nolan that she had more problems with fibromyalgia since her accident, but his "neurological examination was normal with the exception of sensory findings that do not fit a dermatome distribution. I have no explanation for them and do not find evidence of a neurological injury from her accident. She wanted permission to return to Dr. Robert Johnson [her rheumatologist] and I think that would be wise." (R. 281) Beaver was seen again by Dr. Johnson, who wrote a brief letter dated January 23, 2004 summarizing that he had seen her on three occasions in the rheumatology clinic to rule out Lupus and to evaluate various symptoms. (R. 383) His letter recited that he could "confirm that she has a chronic pain syndrome and meets the case definition for fibromyalgia. My rheumatologic exam however is insufficient to assess functional capacity and restrictions." (R. 383, 433)

An administrative hearing was held on May 18, 2004, at which time Beaver testified, along with an independent medical expert, Dr. H.C. Alexander, III, and a VE. (R. 657-715) At the hearing, Dr. Alexander testified that Beaver was capable of a range of light work, with the ability to change positions every thirty (30) minutes and a limitation of no lifting above the chest, and the VE testified that there were certain jobs available in the national economy which a hypothetical person having Beaver's residual functional capacity could perform.

Following the first administrative hearing, Beaver submitted additional medical evidence from early 2004 for review by the ALJ, which the ALJ forwarded to Dr. Alexander. Noteworthy

5

among this additional evidence was a June 3, 2004 Key Functional Assessment performed by Laura Fickel, an Assessment Specialist with Carilion Roanoke Memorial Rehabilitation Center. (R. 439-443) While Fickel's Functional Assessment Overview indicated that Beaver had a workday tolerance recommendation of 6 hours, (R. 445), Fickel discounted this result in her report to Dr. Johnson, stating that the results on the assessment were invalid because Beaver's assessment results "generally represent a manipulated effort by the client." (R. 444) As a consequence, Fickel recommended that Beaver "return to work and do a home exercise program." (R. 444) After review of this additional medical evidence, Dr. Alexander wrote the ALJ, indicating that this additional evidence did not change his opinion. In fact, Dr. Alexander wrote that a "return to work for a person with fibromyalgia would be therapeutic and in line with the treatment of increasing activity." (R. 504)

The ALJ issued a decision on September 8, 2004, finding Beaver not disabled, (R. 17), but the Appeals Council remanded the case for an additional hearing to consider Dr. Alexander's opinion and for a vocational assessment consistent with that opinion. Both Beaver and Dr. Alexander testified at the second administrative hearing held on May 25, 2005, and while the VE was again present, she did not testify at the second hearing. (R. 618-56) Much of the testimony at the second hearing concerned Beaver's evaluation by Drs. Douglas W. Kirtley and Keith D. Munson for constipation and irritable bowel syndrome and further treatment by Dr. Clement Elechi for continued symptoms of fatigue, numbness and dizziness. Following a colonoscopy which revealed no structural lesions, Dr. Kirtley suggested that she might have some neurological neuropathy and suggested a consult with Dr. Munson, a colorectal surgeon. (R. 598) Following his evaluation, Dr. Munson did not think there was anything he could do to impact her symptoms. (R. 569) Dr. Elechi saw Beaver in March and April, 2005, but his

6

examination and review of multiple MRI studies did not permit any specific diagnosis. (R. 578) Following a normal electromyography report, (R. 587), Dr. Elechi concluded that "[t]his remains a challenging case with pain, numbness, and fatigue of unclear origin, in spite of very extensive work up. Differential diagnoses includes autoimmune disease, a post-viral infection syndrome, or even straightforward somatization." (R. 590) Dr. Elechi suggested a referral to a tertiary medical center, such as Johns Hopkins. Given the inconclusive nature of the reports from these doctors, Dr. Alexander did not stray from his prior assessment of Beaver's limitations. (R. 653) Following the hearing, the ALJ left the record open for receipt of records from Beaver's evaluation at Johns Hopkins.

Dr. Ahmet Hoke of Johns Hopkins Medicine evaluated Beaver on August 3, 2005. Dr. Hoke's initial impression was of a postinfectious syndrome with multiple complaints, possibly indicative of fibromyalgia or chronic fatigue syndrome. (R. 600) Dr. Hoke's clinic note and other records from Beaver's visit to Johns Hopkins were received by the ALJ as part of the record. Beaver had a battery of tests at Johns Hopkins, including an EMG, which showed a "borderline, non-irritable myopathy," and normal skin and muscle biopsies. (R. 612-13) Following receipt of these reports, Beaver advised the ALJ that no further medical evidence would be forthcoming, and requested approval of her disability application. (R. 559)

### III.

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, an who are "under a disability." 42 U.S.C. § 423(a) (2000). Disability is defined in 42 U.S.C. § 323(d)(1)(A) (2000) as:

7

> [The] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months.

The Commissioner uses a five-step process in evaluating DIB claims. See 20 C.F.R. § 404.1520 (2007). See also Heckler v. Campbell, 461 U.S. 458, 460-62 (1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he or she can perform other work. See 20 C.F.R. § 404.1520 (2007). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. See 20 C.F.R. § 404.1520(a) (2007).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. See 42 U.S.C.A. § 423(d)(2); McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall, 658 F.2d at 264-65; Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g) (2000)). Accordingly, the reviewing court may not substitute its judgment for that of the ALJ, but instead, must defer to the ALJ's

8

determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). Sufficient evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Shivley v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgement for that for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Mastro v. Apfel, 270 F.3d 171 (4th Cir. 2001).

## IV.

Beaver argues that the ALJ did not properly evaluate the medical evidence. As basis for her argument, Beaver contends that (1) the conclusion of Dr. Robert Stephenson that Beaver is "completely disabled" is authoritative; and (2) the functional capacity assessment test administered on June 3, 2004, proves that she is incapable of substantial gainful employment. (R. 326, 445)

Dr. Stephenson performed a consultative examination at the request of the State Agency. See 20 C.F.R.§ 404.1526 (2007). While Dr. Stephenson was one of many doctors who had examined Beaver, he was the only doctor to opine that she was totally disabled. Although Beaver was subjected to many tests and medical examinations, these tests yielded normal results and did not provide a basis for a definitive diagnosis. Two neurological exams, a motor skills examination, a CT scan, several MRIs of the brain and spine, a lumbar puncture, nerve

9

conduction studies, EMG studies, and over a dozen general medical examinations all yielded little to no objective, physiological evidence that supports a finding of total disability. (R. 21-24, 265, 274, 286, 299, 300, 317) An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527 (d); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th 1996). In short, Dr. Stephenson's conclusion that Beaver was totally disabled stands in stark contrast to the volume of medical data and testing providing no objective basis for her complaints. Indeed, specialist after specialist concluded that they could not explain Beaver's symptoms. Laura Fickel, performing the Key Functional Assessment, concluded that Beaver was manipulating the results and suggested she return to work and an exercise program. (R. 444) Dr. Alexander, the independent medical expert who reviewed Beaver's medical records and heard her testify, concurred that return to work could be of therapeutic value to Beaver. (R. 504)

Furthermore, Dr. Stephenson's conclusion that Beaver was "disabled" is an issue reserved to the Commissioner. Koonce v. Apfel, 1999 U.S. App. LEXIS 307, (4th Cir. 1999); 20 C.F.R. § 404.1527(e). The ALJ noted Dr. Stephenson's opinion in his decision, but afforded it little weight as the issue of disability is one for the Commissioner to make. (R. 29) The ALJ properly considered Dr. Stephenson's medical opinion but rejected his legal conclusion on the issue of disability finding it to be inconsistent with the bulk of the objective medical evidence in the

record and the opinion of an independent medical expert, Dr. Alexander, that Beaver was disabled. Given the volume of evidence in the record regarding the lack of any objective basis for Beaver's symptoms and Dr. Alexander's opinion, the decision of the ALJ is amply supported by substantial evidence.

Second, the Key Functional Assessment performed on Beaver on June 3, 2004, does not support Beaver's argument. Although the assessment record on its face indicates that Beaver should be limited to a six-hour workday, the "validity determination" of the assessment marks the entire assessment as "invalid." (R. 445) Laura A. Fickel, the Assessment Specialist who administered the assessment stated in a report to Dr. Robert A Johnson that "the results . . . generally represent a manipulated effort by the client. Therefore, the levels identified within the assessment do not represent a true safe capability level." (R. 444) Fickel concludes her remarks to Dr. Johnson by recommending that she return to work and do a home exercise program. (R. 444) The ALJ's determination that he could "not attribute any significant weight to this functional assessment report" is clearly supported by substantial evidence. (R. 24)

Next, Beaver argues that the ALJ's credibility determination was erroneous. In her brief, Beaver asserts that the ALJ did not fully credit her pain when formulating the residual functional capacity determination. The determination of whether a person "is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d at 594, (quoting 20 C.F.R. §§ 416.929(b) and 404.1529(b)). "Therefore, for pain to be found to be disabling, there must be shown a medically determinable impairment which could reasonably be expected to cause not just pain, or some

11

pain, or pain of some kind or severity, but the pain the claimant alleges she suffers. The regulation thus requires at the threshold a showing by objective evidence of the existence of a medical impairment "which could reasonably be expected to produce" the actual pain, in the amount and degree, alleged by the claimant." Id. See also, 42 U.S.C. § 423(d)(5)(A) (2000) ( "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings").

The ALJ's credibility conclusion is amply supported by the medical record. For example, both in 2002 and 2003, Dr. Nolan examined Beaver and extensively reviewed her clinical history. (R. 278-80) Dr. Nolan could not find any neurological cause for any of Beaver's alleged symptoms and deemed her subjective assertions of sensory deficits not to be physiologic. (R. 280, 281, 284). Dr. Nolan could offer no explanation for Beaver's subjective complaints. (R. 281, 285). In April, 2002, Dr. Bayliss examined Beaver and found diffuse muscle tenderness not limited to the usual tender point locations of fibromyalgia syndrome. (R. 426) Similarly, in March, 2005, Dr. Elechi reported that it was difficult to anatomically localize her various constitutional and somatic symptoms. (R. 582) Despite Beaver's complaints, medical test upon medical test came back normal. At the second administrative hearing, Dr. Alexander testified that some of the clinical findings from other physicians were indicative of inappropriate illness behavior. (R. 645) Specifically, he testified that the "give way weakness on Beaver's right side noted by Dr. Elechi signaled that it was not physiological in origin." (R. 645) Laura Fickel invalidated the Key Functional Assessment she performed in 2004, deeming Beaver's responses manipulative. Fickel recommended that Beaver return to work and engage in home exercise. Furthermore, Dr. Hoke could not perform a full motor examination on all muscle groups because Beaver gave submaximal effort. (R. 600) In short, despite many efforts by many medical

specialists, no objective basis for Beaver's pain could be identified. The lack of objective evidence, combined with the suggestion of manipulative behavior, is more than sufficient to provide substantial evidence to support the Commissioner's decision.

In sum, the record contains substantial evidence to support findings of the ALJ that Beaver was not disabled based on her age, education, work experience, or residual functional capacity. The ALJ had the opportunity to assess the credibility of Beaver's claim of disability and found that her credibility was undermined by a lack of medically substantiated diagnoses, inconsistencies with Beaver's allegations and the objective findings, and misleading and manipulative actions on the part of the plaintiff during testing procedures. (R. 28-30) The record contains substantial evidence that Beaver is not disabled and not entitled to Disability Insurance Benefits and the ALJ applied correct legal principles in reaching this conclusion. For these reasons, the defendant's Motion for Summary Judgment will be granted and the decision of the Commissioner affirmed.

The Clerk of the Court is hereby directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Enter this _24th_ day of October, 2007.

Hon. Michael F. Urbanski
United States Magistrate Judge